that both counsel are here. Here you are. Joshi versus Garland. And Mr. Yes, we'd be pleasure to hear from you. Good morning and may it please the court Madeline Taylor Diaz attorney for the petitioner Mr. Hanumant Joshi. Mr. Joshi requests that this court vacate the agency's denial of his applications for asylum withholding or removal and protection under the Convention Against Torture for various reasons as raised in the opening brief. Unless this court requests otherwise I'd like to begin by addressing the errors the agency committed related to the definition of persecution and the application thereof in this case. Mr. Joshi assert. Can I start so that I don't forget I'm sorry and I want you to come back to your argument. But I just had a fact question and I want to not forget it. So on page 25 of your brief you talk about it's I'll just quote it you don't need to pull it up I'll give it to you. It's notable that Mr. Joshi's extended family did not target Mr. Joshi's brother another heir to his father's inheritance presumably because he did not have mental health issues. At other places we talk about the half brother who was sort of at least as alleged sort of an accomplice to Mr. Joshi's abuse. This is the only time I see anything about a brother. Is this referring to the half brother? There's no cited there's nothing cited there there's no place for me to find but is that the same half brother who's alleged to be a willing participant in the targeting? Because that that would be like a better reason why he was not targeted right? Yes your honor. Court's indulgence just if I could refer to my notes. This is a different brother if my memory serves me. And where in the record do we find that there is a different brother or what we know about this other brother as being an heir or I just don't see it anywhere else and it doesn't you know the brief doesn't cite anything and we talk a lot about a half brother that comes up and we do see in the record I don't see anything about the brother in the record. If I may your honor I'm prepared during opposing counsel's arguments to find the site in the record. Totally fine I just want to make sure I understand the sort of family dynamics here because that that seemed ambiguous. I appreciate that and we'll address that at the beginning of our rebuttal reserve time. Returning to the question of persecution the agency applied that and that the IJ focused on the treatment of the medical professionals and concluded that it wasn't persecution because the medical professionals did not intend to harm the petitioner. Intent is not part of the requirement required standard for persecution. According to this court in Lee v Gonzalez persecution involves the infliction or threat of death torture or injury to one's person or freedom. Mr. Josie's person and freedom were threatened when he was institutionalized shackled and forcibly medicated and electrocuted. As such medical professionals intentions are irrelevant here. So counsel on this point two questions. Does the BIA opinion yeah the final agency opinion it doesn't seem unless and certainly point me to it if I'm missing it to track the sort of language you're referring to. You know it talks about for sure that the it says based on these facts after listing a lot of them that immigration just concluded it approved the immigration just conclusion that the involuntary hospitalizations and treatment constitute obligatory medical care performed by medical professionals rather than persecution. That statement seems different than focusing on intent. It seems at least at the BIA level to be the fact that this was treatment was a factor in the overall consideration along with a bunch of other things as to whether it rose to the level of persecution or not. So I'm having a little bit of a little hard time interpreting what the BIA actually said to be something as you know making the analysis of persecution based on intent. Correct. So I see your honors distinction there but I would note that at JA4 in the BIA's decision they indicated that it was a permissible reading of the evidence and coming to the conclusion as it related to persecution thereby adopting the insofar as they were wrecking or appearing to recognize that what Mr. Josie underwent in India was permissible medical treatment. It seems to be underpinned by the premise that this was that there was good intentions behind it and I think that there's a great deal on the record which would indicate that this wasn't legitimate medical care. Among the things that would suggest that is the human rights report at 1345 describing how shackling is never a legitimate form of medical care. Also the special rapporteur's report to the UN General Assembly at 801 describing how what the process for obtaining informed consent or in the absence obtaining a court order none of which occurred here. And so insofar as the BIA was saying that this was acceptable medical treatment that he was receiving and was legitimate otherwise it's underpinned by a finding that the permit it was a permissible reading of the evidence for the IJ. Is this ECT operation that he underwent the question of whether that is accepted medical treatment or not is that a question of fact? I do think that there is a question of fact and I would assert that there were there were impermissible factual findings that aren't supported by substantial evidence. Why isn't that a factual finding? I think it's not a factual finding for the court to have conflated the permissible voluntary undergoing of ECT with forced ECT. It was a factual error that's not supported by a substantial evidence to say that he underwent a legitimate legitimate medical procedure when in fact what makes it different here is the fact that there was the forced. And that's well supported by case law and precedent largely in the area of the difference between elective sterilization and abortion and forced sterilization of abortion and abortion. Suppose they had refused the operation and the gentleman had had passed away or suppose they administered the general anesthesia and complications and infections had developed. We'd be in a spot where no one wants to be wouldn't we? Well there's nothing in the record here that suggests that that this treatment was warranted. We're lacking anything in the record which suggests that at the time of his four hospitalizations. Which also means that we're the challenge. I took your answer to judge Wilkinson to agree that ECT could be a permissible treatment. You said if it's voluntary that that would be a permissible treatment. But once we acknowledge that it could be a permissible treatment and we lack sort of like records to show that it was not a permissible treatment in this instance, how do we find that it's torture? That it's persecution? I mean that seems like a big jump. You understand my hesitation? But I think there's two ways I would respond to that. There's a difference between ECT and forced ECT. And that's based on what? Like what are you basing that? I mean I understand you think that might be different in a non-mental health treatment context but you know forced medication in the common medical treatment and one that in fact this court like is involved in as a regular matter. Yes but in on the record here there is evidence which suggests that forced ECT is never accepted medical treatment. And that comes at the Human Rights Watch report as well as the Special Repertoire on Torture's report to the UN General Assembly which says that. But is there any medical evidence of that? I mean I understand the Human Rights Watch doesn't like it and I probably don't like it either but that's a different question as to whether like a reasonable doctor could believe that this is what would help treat his condition that was resulting in like what seems to be plainly negative behavior. In this case there is no evidence that there was negative behavior pre-empting any of these four institutionalizations. In fact his testimony which was found to be credible said that in fact the motivation of his family members in getting him institutionalized each time was their insidious desire to get rid of him. So I think it would be a different instance if we had facts on the record which suggests he was undergoing some sort of medical emergency. And again I note your Honor's point that. So your point is that based on this record the American hospitals that were forcibly hospitalizing him not ECT but forcibly hospitalizing him they too were committing persecution and torture? No your Honor because. Have you brought a claim against them? There's a great deal of difference between the type of hospitalization that occurred in the United States. But they're both forcible right? I mean they both were against his will. He didn't want to go in. He says I'm doing great right? I got no problems. Obviously lots of people both in America and India disagree with that. We can see that based on the conduct. But we have evidence on the record that in the United States at the time of his hospitalizations one of which was with his consent and two times there was a court order. So there is evidence on the record which suggests it was warranted. There is no evidence and in fact there's evidence on the record that at the time of his hospitalizations one time he was smoking a cigarette hanging out outside of his apartment another time he was having breakfast. There is on the evidence on the record which suggests he wasn't having the kind of acute mental health crises which occurred in the United States. Also there's evidence on the record. How does it deal with the case of Youngberg versus Romeo? That's not helpful to you is it? Your honor I'm not familiar with the facts of that case. I would be happy to provide some briefing on it but I do think that there are cases. Because Youngberg the Supreme Court realized or held that there were situations in which forcible subjection of at least violent or uncontrollable individuals is not persecution. So if a forcible procedure is not per se persecution, whether this particular procedure was persecution or not would seem to be in the realm more in the realm maybe of fact than it is a question of law which it would have been had Youngberg gone the other way. To return to my colleague Judge Quattlebaum's question, the Supreme Court defines persecution as the infliction or threat of death, torture, or injury to one's person. Which is it? I think that there was a threat to his freedom. He testified that on every time he was taken from his home he had to be shackled or medicated with an unknown substance to subdue him. Again without any evidence on the record that it was warranted. He also testified that he continued to have marks on his arms after he had fought against the forced ECT. He also testified that was accomplished under the threat of solitary confinement. And I do think that the case law as it relates to the forced sterilization and abortion cases is helpful here. In Ray TZ, which is a 2007 BIA case, the question presented there was that whether or not a forced abortion or forced sterilization is forced. So the question was when does a sometimes legitimate procedure become forced? And the BIA held in that case that of course physical force should be enough and specifically references shackling there, which is what happened with Mr. Joshi in this case. But they also go on to say that one of those procedures, which might otherwise be legitimate, could be forced when there's threats of harms that a person would view as threats of harm. But counsel, I'm sorry to interrupt you, but I guess when I'm trying to figure, I mean I certainly can appreciate the argument that certain medical treatment, you know, at times could be persecution. So the concept that because it's medical, you know, no chance of any persecution I think has some appeal. But I'm struggling with the notion that your suggestion, we have in the record evidence in the United States of your client not taking medication and becoming violent, which is requiring, you know, involuntary hospitalization. And then it seems like what we're saying, you're saying is, well, you can't look at that. You need to have that same level of evidence of what was going on in the situation in India. And that seems like you're putting a pretty high burden for us to ignore what's in the record that's happened here and just to say we can't, the immigration judge, you know, can't as a matter of fact infer from that something, that there's a need for at least the involuntary hospitalization. So then you get the question of, okay, what do you do? What's supposed to happen or not in the case of an involuntary hospitalization? And I suppose you would say certain medical treatment, assuming you get there, certain medical treatment that might not be, you know, desired is okay. Maybe you're saying if the patient says I don't want any treatment, I don't want any pill, I don't want anything, that's persecution. It seems like that's a stretch. So you kind of end up with, well, it's this forced ECT or EVT. I'm sorry if I have it wrong. So I'm just, I mean, where along those things, it seems like you've got to win at every step of the way. And that just seems like a tall order for a factual question. Yes, your honor. And I don't argue that he should have never been subjected to any medical treatment and that what occurred in the United States would also amount to persecution. But there were huge differences between what occurred in the United States and what occurred in India that I'm happy to address. But more importantly, I think the agency failed to consider all of the facts on the record and was primarily that he wasn't, there wasn't any evidence of medical need. And that also what ended up occurring in the facility. I'm sorry, there's no evidence, your position is there's no evidence in the record that your client needed mental health treatment. While he was in India. And the immigration judge needed that form of mental health treatment. And the immigration judge found as credible the fact that really this was motivated by greed. In the next section, the immigration judge doesn't suggest that this was motivated by any desire to get him mental health treatment, but noted this was motivated by the family's greed. And so I note that I'm almost out of time. But the other error that relates to persecution. But if that's the case, I mean, yeah, I mean, you could go that route, but you run straight into the nexus problem there. I mean, you can't have it both ways. You can't say there's no evidence of medical need. It's all about a family situation. And then have your own medical issues related to mental health. Those seem like you get yourself going and coming one way there. Well, as it related to nexus, what we were asking that the court do or what we believe the court must do on remand is consider the mixed motives in this case. Notably, as it related to persecution, they only consider the intent, which was an error, of the medical workers. Do you agree that he falls in his alleged social group? Pardon me, can you? Men with mental illnesses, severe mental illnesses? Yes, I do think that there was evidence on the record and that didn't appear to be argued at any point by any individuals that he didn't qualify on a cognizable PSG. Right, and that cognizable PSG is someone with severe mental illness. Yes, your honor. And that some amount of medical care was warranted for him, but there's no evidence that the type of forced ECT, which was violent, was necessary, as well as the cumulative experience of harm, as this court is required to consider. Thank you, counsel. Mr. Joseph? Good morning, your honors. May it please the court, Bernard Joseph for the Attorney General of the United States. The court should deny Mr. Yoshi's petition for review. We're dealing with an individual who's had mental health issues for well over a decade, resulting in multiple instances of involuntary hospitalization in both the United States and also in India. And just to follow up quickly on something that was raised earlier before I forget. Counsel, before you do that, I'm sorry to interrupt you. I just want to deal with an issue of the one-year time bar. It seems like the government didn't brief that issue. That doesn't mean we can't consider it, but the BIA didn't appear to address it at all. It's the government's position. The immigration judge dealt with it. The board did not deal with it at all. And under the scope and standard of review, it's not before the court at this point. However, on remand, it would be an issue. And I think that the court doesn't have the jurisdiction to review it in any event. But I appreciate you can go on the order you were going. But Judge Richardson, the government also had the same question about whether or not there was an unidentified brother as well. The only brother that we saw on the record was a half brother on his father's side named Samir. And I'm looking at a JA442 who's 21 years older than Mr. Yoshi, lives in the United States. And you said the half brother's name is Samir? Yes, he is. And Samir also... Just to help counsel when they're coming back up on JA716, he identifies his family and identifies a single brother, Samir, which I believe is the half brother. Correct. He's a United States citizen in his asylum application. And also in the notes for his medical treatment here in the United States, he refers to a brother, Samir. Or there's reference to a brother, Samir, who comes to help him with the treatment that's going on. Do you agree that the nature of this treatment or operation, whether it's curative or whatever, therapeutic, do you agree that that's a factual question? Your Honor, the question of whether or not the treatment that Mr. Yoshi received in India, specifically the modified ECT, is a factual question. So the nature of what was performed in your judgment is a factual question? Correct, Your Honor. And then so if you get it, if you move from there to say that a therapeutic operation or a medically accepted operation cannot be, by definition, persecution because it does not amount to threaten death, torture, or injury, and the different categories that we cannot rise to that level, that's not what Congress meant by persecution, correct? Correct, Your Honor. And I think that there's nothing in the record that would compel a conclusion that the treatment that Mr. Yoshi received at any point, whether it's in India or in the United States, would rise to the extreme level of persecution. And his burden is to show compelling evidence. I think there's substantive evidence in the record that supports that this modified ECT is a generally accepted... And then the question also of Nexus, you agree with the question of whether this was done out of concern for his mental health or out of his financial gain or whatever it was, that those motives there, that's also a factual matter, isn't it? Yes, Your Honor. Why so-and-so acted in such-and-such a way? Yes, Your Honor, that is a factual question. What you're indicating here is that both the nature of the treatment and the question of Nexus are factual questions and there's substantial evidence to support the findings below. That's the essence of it, is it not? That is the essence, Your Honor. And Mr. Yoshi hasn't showed any compelling evidence to reverse the agency's decisions. And that's his burden, his compelling evidence. Cardozo-Fonseca says you have to... to overturn this has to be such that no reasonable fact finder could find the contrary. And there's certainly a reasonable fact finder could find exactly what these reasonable fact finders found, right? But if there are two plausible explanations, then you can't say that the one explanation of the agency and the other brought by the petitioner, the agency's conclusion has substantial evidence to support it. I think what Mr. Yoshi has to show is that no reasonable fact finder could come up with the decision the agency came up with. And he fails to do that in this case. And earlier, Mr. Yoshi's counsel said that the reasons for his hospitalization in India had nothing to do with his mental health. But the first time he was hospitalized, he testified that part of the reason was his father and his paternal cousin who had decided to hospitalize him. And he said that my mental health was not good at that time and they had concerns for his health. For the second time he was hospitalized, he also thought that his mental health wasn't good at the time. It was only until the third and fourth times he was hospitalized that he raised the possibility that there was some insidious reason behind it. So there was concerns for his health for at least half of the time he was hospitalized. And for the third and fourth time, part of the issue was, according to Mr. Yoshi, this insidious reason that they wanted property was going to go to him. Counsel, at this point, if it's agreeable with you, I think I'm going to ask my co-panelists if they have some questions. We have no questions. We very much appreciate your argument. Thank you, your honors. The respondent would then say that the court should deny the petition for review. Thank you so much. Ms. Oltis, do you have some rebuttal time? May it please the court. I'll start by addressing Judge Richardson's question. We were intending to refer to the half-brother in the brief, and so we were arguing that we found it notable that the cousin didn't target the half-brother, presumably because the half-brother wasn't so easily, quote, gotten rid of. Isn't it more obvious explanation that the half-brother was in on it? I mean, I'm just taking his allegations, right? So the half-brother seemed to be a confederate of the cousin, and so it seems odd to say that it has anything to do with mental illness, but instead, we don't tend to target our confederates, right? I mean, the cousin's trying to work with the half-brother to get the money. Yes, and I think our main points in that argument about nexus were that the judge committed a legal error by not considering the mixed motives of the cousin and the half-brother, and then also the judge committed a legal error by not considering the motives of the medical professionals or the police. The challenge is, like, this was the argument you were making as to, wow, this was about mental illness at all, right? You're like, well, but they didn't target this brother. They targeted the one with mental illness. That seems like, to me, falls away and is not a very persuasive argument, and so why should we assume that there is this mixed motive, right? So there's, I understand, a greed motive, at least as alleged here, but why the mental health piece? How do you get to a mixed motive? Yes, Your Honor. So I think one case from this court that is very helpful when analyzing this situation is the court's recent decision in Chico's Machado, which discussed that the nexus standard does not depend on the ultimate goal of the persecutors or on why the protected ground led them to persecute an applicant. Instead, the BIA and reviewing courts consider only whether the applicant can demonstrate that the persecution was on account of a protected ground. Right, and the court, and that's not in the court, but the agency found no. I thought this was a persuasive argument, that he has a brother who was not targeted until we figured out that that was the brother who was targeting him, right? So that's not helpful evidence now, and so why do we think that there's any reason to think that he was targeted on account of his mental illness? Right, so I think taking the court's decision in Chico's Machado, greed certainly was a motive for those family members, but why they targeted him and the way that they targeted him by having him institutionalized against his will was because of the situation in India where under the Mental Health Act, individuals can be institutionalized without their consent, and so I think that circumstantial evidence of the way that they persecuted him shows that his members... So you'd say the same thing, so your point is also people like your client in the United States involuntarily, and so that anytime somebody does that, that's persecution on account of a protected group? No, your honor, we would not say that what happened in the United States is persecution at all, rather that was... So why is it different? Like that's what I'm having trouble with, right? So it seems like in both instances, like he's involuntarily institutionalized because as the facts at least suggested here, he was violent and non-compliant with his medications? I see I'm almost out of time, but I'd like to address your question, so if I may... Please. So I think first and foremost, the hospitalizations in the U.S. were brief and pursuant to court order. In India, and as Mr. Joshi testified, he's not afraid of being hospitalized in India, he made the distinction that he's afraid of being institutionalized, and the country conditions make clear that family consent and these institutionalizations have no appeal rights, and there's no appeal process or review, and many of these institutionalizations last for decades. Additionally, the care that was given... Just to understand that argument, the argument is it's persecution where you lack sufficient procedural safeguards, right? When the mental health system operates differently? I think this is just one way that the treatment was different, but the persecution was much more about the force and the kind of treatment that he received while he was in the institutionalizations, but I do think that... Thank you very much. Thank you. And we will come down and greet counsel, and if you would come up and give me a fist bump, I would appreciate it.
judges: J. Harvie Wilkinson III, Julius N. Richardson, A. Marvin Quattlebaum Jr.